UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

BARBARA OLSEN, DONALD OLSEN, SR.,
DONALD OLSEN JR., and LONG ISLAND
HOUSING SERVICES, INC.,

Civil Action No
09 4283 (LW) (MO)

                     Plaintiffs,

**AFFIDAVIT
IN SUPPORT**

       v.

STARK HOMES, INC D/B/A GLENWOOD VILLAGE,
and BRIAN STARK,

              Defendants,

---------------------------------------------------------------------X

STATE OF NEW YORK )
            )ss.
COUNTY OF SUFFOLK)

     William Brian Stark, being duly sworn, deposes and says:

     1     I am a named Defendant in this case, and I serve as Vice-President of Stark Homes Inc d/b/a Glenwood Village (hereinafter "Glenwood"), and General Manager  I am submitting this affidavit in support of the Defendants' motion for summary judgment because I believe that there is no basis for the suit

     2     Glenwood is a retirement community of manufactured homes owned by the residents and located on, lots owned by Glenwood. The residents occupy their homes and lots pursuant to a written lease (See Residence Agreement Exhibit "K") with Glenwood. Their sales agreements are subject to Glenwood's approval, which in turn, requires an acceptable credit check, and proof of all resident-applicants' being 55 years or older.

3.     As long as I have been working in my present capacity, Glenwood has implemented, and enforced, a consistent policy that restricts occupancy to residents at, or over, the age of fifty-five (55). Notice of the over-55 restriction is prominent in our brochures, advertising, web site, leases, application forms, and our reputation. Applicants are required, at the time of application, to produce proof of age, sign a truthful application, agree to our "Guidelines for Living", and sign a residency agreement (the lease). All documents prominently set forth the over-55 age restriction

4.     It is appropriate to emphasize, at this point, that my staff and I make ourselves available for numerous showings of available homes throughout the week. Glenwood has available sites on which new homes can be constructed, as well as listings of existing homes for sales. Many people visit Glenwood as part of their plans for the future, just to shop, or view, the range of accommodations available in the manufactured home market at Glenwood

5     The fact that I, or my staff, show available lots and models, existing, or to be constructed, to potential buyers that may indicate that they are 53 or 54 years of age is not unusual We do not preclude or discourage people younger than 55 from viewing our units, we just make our residency policy clear. It is at the time of application, before a lease is signed, that the over-55 policy is enforced

6.     As a result, the allegations of the Long Island Housing Services based on "testers" it employed, do not prove anything, other than our standard policy of showing units and showing off our community to prospective or future residents.

7     I have no recollection of meeting with any of these testers, but I am told by my attorneys that none filled out a guest card or an application for residency and that

2

each can contribute nothing other than they represented, or misrepresented, themselves and wanted to look at units at Glenwood.

8      In fact, I am told by my attorneys that one "tester," Wendy Warren, who alleges that she informed me that she wanted to move in with her mentally-disabled daughter, admitted that she had no reason to believe that she would not have been able to live there with her fictitious mentally-disabled daughter. (Warren dep., p. 42) Only one of the alleged testers apparently filed out a signature card, but one filled out an application. He one signature card include a name and address, but "absolutely" no date of birth. The tester who mentioned her 40-year old daughter with a "mental disability" has testified that after her ten-minute visit in the Glenwood office, she just "left." At that time, she testified she had no reason "to believe she would not be able to live there with her fictitious daughter." (Warren dep. pp. 16, 42)

9      As previously stated, Glenwood abides by guidelines set by the United State Department of Housing and Urban Development. Those guidelines include the right to restrict occupancy to residents over 55. Glenwood attempts to strictly adhere to those guidelines to maintain its reputation, community, and zoning status. We have, however, made exceptions where an adult child provided essential care to a parent and, in the case of Jonathan Cioffi, where the care of a parent, over 55, was essential to the adult child.

10.    We processed, and approved, Mr. and Mrs. Olsen's application for residency (Exhibit "J"), not knowing that they had misrepresented themselves as the only prospective residents on the application. Glenwood was not informed by the Olsens of their desire to have their son, Donald, live with them as a result of his alleged mental

3

disability, before their submitting this signed application. The only encounter that I had with any of the Olsens was a telephone conversation with Mrs. Olsen during which I inquired about, and requested, proof of their son's disability. We thereafter received Dr Romano's January 31, 2008 letter (Exhibit "M"), and nothing more. It was left at our office in the mailbox, and no one offered anything further. I never saw, or received a call, from Donald Olsen Jr., or his doctor. Any reasonable reading of Dr. Romano's letter would cause the reader to conclude that while Mr. Olsen may suffer from depression, his alleged depression does not stand in the way of his ability to "live independently without support", according to his own doctor. Accordingly, based on the information available to us, an exception to our policy was not necessary, since, according to Dr. Romano it was "without question", to him, that Donald Olsen, Jr. could live "independently". I accepted this doctor's letter as the Olsen's only evidence of Mr. Olsen's alleged disability.

11. It is respectfully hoped that the Court recognize the nature of the claims in this case, and that they are "engineered" by Donald Olsen, Jr., a self-styled "advocate" for persons with mental health issues who lobbies the New York Legislature. Based on this involvement, he has decided to benefit himself. The Long Island Housing Services is compromising its reputation by supporting a case founded upon a medical opinion, by its expressed language, which undermines the Plaintiff's claims.

12. It is important to the residents of our 520 units that we maintain a consistent policy and the kind of community encouraged by the HUD regulations. We would not be serving our residents if we made indiscriminate exceptions as requested by the Olsens, and for some unknown reason, that contravene Long Island Housing Services

4

public purpose  Further, as is evident from the facts, and Mr. Olsen Jr 's inability to tell the truth, the circumstances and timing of the Olsens' purported need to move into Glenwood, a well-known and established over-55 community was directly related to his currently pending criminal sexual assault charges. These charges resulted in lying at his deposition, and to the LIHS. It also resulted in his parents' fabrication, after the fact, of their need to move and postpone Mrs. Olsen's surgery, none of which information was provided to me before February 5, 2008.

13     It is respectfully requested that this case be dismissed based on the facts, the Plaintiffs' lack of truthfulness, and the fact that our decision with respect to Mr. Olsen Jr.'s request was consistent with his own psychologist's opinion provided to us.

BRIAN STARK

Sworn to before me this
18th day of February, 2011

Notary Public

JOHN L. CIARELLI
Notary Public, State of New York
No. 02Cl4713967
Qualified in Suffolk County
Commission Expires June 30, 20

5