**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------

BARBARA OLSEN, DONALD OLSEN, SR.,
DONALD OLSEN, JR., and LONG ISLAND
HOUSING SERVICES, INC.,

              Plaintiffs,

     -against-

STARK HOMES, INC. D/B/A GLENWOOD
VILLAGE and BRIAN STARK,

            Defendants.
------------------------------------------------------------

**PLAINTIFFS' PROPOSED
JURY INSTRUCTIONS**

JUDGE LEONARD D. WEXLER

09-cv-04283 (LDW)(ETB)

      Plaintiffs respectfully request that the Court give the attached proposed jury instructions

in its charge to the jury.

**General Instructions**

Plaintiffs' propose that the Court's General Instructions regarding the following subjects be read to the jury:


- Province of Judge and Jury

- Jury Conduct

- Evidence

- Burdens of Proof

- Credibility of Witnesses

- Objections and Rulings


Authority:  *e.g.*, *Fed. Jury Practice & Instructions* (6th Ed. 2012)

**Plaintiffs' Proposed Jury Instruction No. 1**

<u>Statement of the Case</u>

The Plaintiffs in this case—Donald Olsen, Sr., Barbara Olsen, Donald Olsen, Jr., and Long Island Housing Services, Inc.—bring claims under the federal Fair Housing Act and the New York State Human Rights Law.  The Defendants—Stark Homes, Inc., and Brian Stark—deny that they have violated these laws.  I will explain the nature of the claims Plaintiffs have asserted against the Defendants and the elements of each of the claims and defenses in the following instructions.

**Plaintiffs' Proposed Jury Instruction No. 2**

<u>Fair Housing Laws -- General</u>

Under both the federal Fair Housing Act and the New York State Human Rights Law, it is unlawful to discriminate in the sale or rental of a dwelling or to discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling because of a handicap or disability of a buyer or renter, or a person residing in or intending to reside in that dwelling after it is sold, rented, or made available, or any person associated with that buyer or renter. For purposes of this case, the term "dwelling" includes a mobile home lot and any dwelling unit situated on it.

These laws further define discrimination to include a refusal to make reasonable accommodations in rules, policies, practices or services when such practices may be necessary to afford such a person equal opportunity to use and enjoy the dwelling.  These laws impose an affirmative duty upon housing providers to reasonably accommodate the needs of disabled people unless the accommodation causes a fundamental alteration in the nature of the program or an undue financial and administrative burden. Therefore, a reasonable accommodation means changing a rule that generally applies to everyone so as to make its effect less of a burden on the individual with a handicap or disability.

Authority:  42 U.S.C. §§ 3604(f)(1), (2), (B); 24 C.F.R. §100.202; NY CLS Exec § 296 (18); *Groner v. Golden Gate Gardens Apts.,* 250 F.3d 1039, 1043 (6th Cir. 2001); *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341 (E.D. N.Y. 2005); *Samuelson v. MidAtlantic Realty Co.*, 947 F. Supp. 756, 759 (D. Del. 1996); *Hirschmann v. Hassapoyannes*, 16 Misc. 3d 1014, 1017 (Sup. Ct. 2007).

**Plaintiffs' Proposed Jury Instruction No. 3**

<u>Definition of "Handicap" and "Disability"</u>

For purposes of this case, the terms "handicap" and "disability" mean (1) a physical or mental impairment which substantially limits one or more of a person's major life activities,  or (2) a record of having such an impairment, or (3) being regarded as having such an impairment.

A "physical or mental impairment" includes any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. The term "physical or mental impairment" includes, but is not limited to, emotional illness.

An impairment "substantially limits" a person's major life activity if it prevents or severely restricts the person from engaging in one or more major life activities, compared to the average person in the general population. To decide if a person's alleged impairment substantially limits a major life activity, you should consider the nature and severity of the impairment, how long it is expected to last, and its expected long-term impact.

"Major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

"Has a record of such an impairment" means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

"Is regarded as having an impairment" means (1) Has a physical or mental impairment that does not substantially limit one or more major life activities but that is treated by another person as constituting such a limitation;  (2) Has a physical or mental impairment that substantially limits one or more major life activities only as a result of the attitudes of other

toward such impairment; or (3) Has none of the impairments defined here but is treated by

another person as having such an impairment.


Authority: 42 U.S.C. § 3602(h)(1); 24 C.F.R. § 100.201; *Pattern Civil Jury Instructions for the Seventh Circuit*, No. 4.04 (ADA Employment Accommodation).

**Plaintiffs' Proposed Jury Instruction No. 4**

<u>Discrimination in Sale or Rental</u>

One of the Plaintiffs' claims in this case is that the Defendants discriminated in the sale or rental of a mobile home lot in Glenwood Village because of the handicap or disability of Donald Olsen, Jr.

Making a housing determination based on whether the nature and characteristics of a prospective tenant's disabilities – specifically, the tenant's depression and suicidal ideation – is the denial of an equal housing opportunity on the basis of handicap or disability.

Your verdict must be for Plaintiffs on this claim if the following elements have been proved by Plaintiffs:

*First*, Defendants refused to rent a mobile home space to Plaintiffs, or refused to approve the sale of a mobile home to Plaintiffs; and

*Second*, Plaintiff Donald Olsen Jr.'s disability played a part in Defendants' decision.

 If either of the above elements has not been proved, your verdict must be for the Defendants on this claim based on discrimination in sale or rental.

Authority: *Model Civil Jury Instr. 8th Cir*. No. 5.01 (2011) (modified for a fair housing claim); *Model Civil Jury Instr. 9th Cir*. No. 10.1C (2007); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995); *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986); *Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378, 390-391 (D. Conn. 2009); H.R. Rep. No. 100-711, at 18.

**Plaintiffs' Proposed Jury Instruction No. 5**

<u>Reasonable Accommodation Claim</u>

In addition to their claims of discriminatory treatment in the sale or rental of a dwelling, Plaintiffs have alleged a violation of law for failure to reasonably accommodate.  Under both the federal Fair Housing Act and the New York State Human Rights Law, it is unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

By definition, an "accommodation" requires the housing provider to treat a potential buyer or renter with a handicap or disability differently, *i.e.,* preferentially. The fact that the difference in treatment violates a housing provider's disability-neutral rule does not by itself make the accommodation unreasonable or beyond the reach of these laws. A housing provider must incur reasonable costs and take modest, affirmative steps to accommodate the disabled as long as the accommodations sought do not pose an undue hardship or a substantial burden on the housing provider.

To make out a claim of discrimination based on failure to reasonably accommodate, the Plaintiffs in this case must demonstrate that: (1) Donald Olsen, Jr. suffers from a handicap or disability as defined in these instructions; (2) the Defendants knew or reasonably should have known of Donald Olsen, Jr.'s handicap or disability; (3) an accommodation of Donald Olsen's handicap or disability was necessary to afford the Plaintiffs an equal opportunity to use and enjoy the dwelling; and (4) Defendants refused to make such accommodation.

Authority:  24 C.F.R. §100.204; *U.S. Airways v. Barnett*, 535 U.S. 391, 397 (2002) (ADA); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 578 (2nd Cir. 2003) (FHA); *Sinisgallo v. Town of Islip Housing Authority*, 2012 U.S. Dist. LEXIS 72123, at *71 (E.D.N.Y. 2012) (FHA); *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341 (E.D.N.Y. 2005) (FHA); *Hirschmann v. Hassapoyannes*, 16 Misc. 3d 1014, 1017 (Sup. Ct. 2007) (FHA and NY Exec. Law §296).

**Plaintiffs' Proposed Jury Instruction No. 6**

<u>Necessity/Reasonableness</u>

A requested accommodation is "necessary" if it will affirmatively enhance the disabled person's quality of life by ameliorating the effects of the handicap or disability.

A requested accommodation is "reasonable" if it does not impose an undue hardship on the defendant and would not make a fundamental or substantial alteration to the defendant's business operations.

Mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement.  A landlord has a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary.

Authority: *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995); *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1136-38 (9th Cir. 2001) (ADA, §504); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010) (§504); *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155-57 (9th Cir. 2003) (FHA).

**Plaintiffs' Proposed Jury Instruction No. 7**

<u>Individual Consideration of Accommodation</u>

In determining whether the Plaintiffs' requested accommodation was reasonable in this case, you should consider their request individually. In other words, in deciding whether the accommodation would have imposed an undue financial or administrative burden or have changed the fundamental nature of the defendant's business, you should examine the consequences of allowing the Plaintiffs' accommodation, not the consequences of allowing other residents similar accommodations. The reasonableness inquiry is fact-specific and requires a case-by-case determination.

Authority: *Fulton v. Goord*, 591 F.3d 37, 44 (2d Cir. 2009) (ADA, §504); *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 999 (9th Cir. 2000), aff'd 532 U.S. 661 (2001) (ADA); *Sinisgallo v. Town of Islip Housing Authority*, 2012 U.S. Dist. LEXIS 72123, at *71 (E.D.N.Y. 2012) (FHA); *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 344 (E.D.N.Y. 2005) (FHA).

**Plaintiffs' Proposed Jury Instruction No. 8**

<u>Interactive Process</u>

Once a housing provider is aware of a prospective tenant's handicap or disability and an accommodation has been requested, the housing provider must discuss with the tenant or applicant whether there is a reasonable accommodation that will permit him to live in the property. Both the housing provider and the tenant or applicant must cooperate in this interactive process in good faith. Neither party can win this case simply because the other did not cooperate in this process, but you may consider whether a party cooperated in this process when deciding whether a reasonable accommodation existed or whether to award punitive damages.

Authority: *Pattern Civil Jury Instructions for the Seventh Circuit*, No. 4.08 (ADA Employment Accommodation); *Jankowski Lee & Assoc. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996) (FHA Accommodation); *McBride v. BIC Consumer Products Manufacturing Co., Inc.*, 583 F.3d 92, 100 (2d Cir. 2009) (ADA Employment).

**Plaintiffs' Proposed Jury Instruction No. 9**

<u>Impermissible Inquiries</u>

It is unlawful under the Fair Housing Act and the New York State Human Rights Law to make an inquiry to determine whether an applicant for a dwelling, a person intending to reside in that dwelling after it is so sold, rented or made available, or any person associated with that person, has a handicap or to make inquiry as to the nature or severity of a handicap of such a person. However, these laws do not prohibit the following inquiries, provided these inquiries are made of all applicants, whether or not they have handicaps:

(1) Inquiry into an applicant's ability to meet the requirements of ownership or tenancy;

(2) Inquiry to determine whether an applicant is qualified for a dwelling available only to persons with handicaps or to persons with a particular type of handicap;

(3) Inquiry to determine whether an applicant for a dwelling is qualified for a priority available to persons with handicaps or to persons with a particular type of handicap;

(4) Inquiring whether an applicant for a dwelling is a current illegal abuser or addict of a controlled substance;

(5) Inquiring whether an applicant has been convicted of the illegal manufacture or distribution of a controlled substance.

Authority: 24 C.F.R. §100.202(c); *Hirschmann v. Hassapoyannes*, 16 Misc. 3d 1014, 1017 (Sup. Ct. 2007).

13

**Plaintiffs' Proposed Jury Instruction No. 10**

<u>55 and Over Housing</u>

The Defendants in this case contend that they operate Glenwood Village as housing for persons who are 55 years of age and older.  Such housing communities for persons who are 55 and older are permitted under the Fair Housing Act and the New York State Human Rights Law.

In order for a housing facility or community to qualify as housing for older persons under the Act, at least 80 percent of its occupied units must be occupied by at least one person 55 years of age or older.  Occupied by at least one person 55 years of age or older means that on the date the exemption is claimed, at least one occupant of the dwelling unit is 55 years of age or older. Housing satisfies the requirements of these laws even though there are units occupied by people who are necessary to provide a reasonable accommodation to disabled residents and who are under the age of 55.

Although housing communities that qualify as housing for older persons are permitted to discriminate against children and families with children, such communities must still comply with these laws' prohibitions against discrimination based on handicap or disability, including the provisions requiring reasonable accommodations to be made for people with disabilities.

Authority:  42 U.S.C. §3607(b); 24 C.F.R. §110.305.

**Plaintiffs' Proposed Jury Instruction No. 11**

<u>Plaintiff Long Island Housing Services, Inc.</u>

Plaintiff Long Island Housing Services, Inc., is a private, non-profit organization whose mission is to eliminate housing discrimination against all persons because of race, color, religion, sex, handicap or disability, familial status, or any other characteristic protected under federal, state, or local laws.

Such an organization is permitted to bring suit on its own behalf for injury to its ability to carry out its mission.  Plaintiff Long Island Housing Services must show that it devoted significant resources to identify and counteract the Defendants' practices, to the detriment of its efforts to obtain equal access to housing through its other programs.

Authority:  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993); *Eastern Paralyzed Veterans Ass'n, Inc., v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203, 211-12 (E.D.N.Y. 2001).

**Plaintiffs' Proposed Jury Instruction No. 12**

<u>Testers</u>

You have heard testimony from witnesses who were referred to as "testers."  In the context of this case, a "tester" is a person who, without an intent to rent or buy a dwelling, poses as a potential renter or buyer for the purpose of collecting evidence of the Defendants' rental practices.  The Supreme Court of the United States has recognized that such testing is a necessary and appropriate means of enforcing this country's fair housing laws.  The activities of testers are a reasonable means by which citizens may ascertain compliance with fair housing laws.  Evidence of testing activities, if otherwise found to be credible, is an appropriate method of demonstrating the policies and practices of the Defendants in a case of this nature.  The fact that a tester may not have given the Defendants accurate information, and the fact that she may have approached the Defendants without any intention of renting a mobile home lot are not factors that impair the tester's credibility as a witness in this case, nor should these factors be considered by you in evaluating the Plaintiffs' claims.

Authority:  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Cabrera v. Jakabovitz*, 24 F.3d 372, 377 n.1 (2d Cir. 1994); *Richardson v. Howard*, 712 F.2d 319 (7th Cir. 1983); *Hamilton v. Miller*, 477 F.2d 908 (10th Cir. 1973); *see* 5 L. Sand, *et al.*, *Modern Federal Jury Instructions* ¶ 87.02, at 87-30 (2012).

**Plaintiffs' Proposed Jury Instruction No. 13**

<u>Liability of Corporations</u>

Corporations are legal entities, separate and distinct from the persons comprising them. Although a corporation can act only through its employees, agents, directors, and officers, it has a distinct identity for business and legal purposes.

A corporation is responsible for acts or omissions of its employees, agents, directors, and officers in the scope of their employment. Therefore, any act of employees, agents, directors, and officers of Stark Homes, when acting within the scope of their employment is an act of Stark Homes.

Thus, if you find that any individual acting as an employee, agent, director, and officer of Stark Homes engaged in discrimination and is liable under the Fair Housing Act, you must find Stark Homes liable as well.

Authority: *Manual Model Civ. Jury Inst. 9th Cir.*, No. 4.2 (2007); *Meyer v. Holley*, 537 U.S. 280 (2003); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1190 (9th Cir. 1995).

**Plaintiffs' Proposed Jury Instruction No.  14**

<u>Damages -- Generally</u>

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for one or more of the Plaintiffs, you must determine the damages, if any, to award to each Plaintiff.

Plaintiffs seek recovery of two types of damages—compensatory and punitive damages. There are different rules that apply to each type of damages.  Consequently, you must also consider each type of damages separately.  I will explain the two types of damages to you in the next instructions.

The Plaintiffs have the burden of proving damages by a preponderance of the evidence, and it is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Authority: *Manual Model Civ. Jury Inst. 9th Cir*, Nos. 5.1 and 5.2 (2007).

**Plaintiffs' Proposed Jury Instruction No.  15**

<u>Compensatory Damages</u>

If you find the Defendants liable for violating any Plaintiffs' rights, you may award compensatory damages to that Plaintiff.

Compensatory damages means the amount of money which will reasonably and fairly compensate the Plaintiff for any injury you find was caused by the Defendants.  Compensatory damages include any mental or emotional pain, humiliation, and suffering experienced by Plaintiff; such sum as will reasonably compensate for any loss of use and enjoyment of housing; such sum as will reasonably compensate that Plaintiff for any violations of the Plaintiff's rights under federal and state fair housing laws that you find the Defendants committed; and any out-of-pocket expenses or inconvenience suffered by that Plaintiff as a result of the Defendants' conduct or non-action.

In determining the measure of compensatory damages, you should consider:

(a) The nature and extent of the injuries;

(b) Financial losses;

(c) Embarrassment and humiliation; and,

(d) The mental, physical, emotional pain and suffering experienced.

While I said that damages must be proved, not all damages are susceptible of exact determination.  If you find that a Plaintiff suffered emotional distress or mental anguish as a result of the Defendants' conduct, you should compensate the Plaintiff for the harm done.

Emotional distress can be established through the testimony of a Plaintiff or other witnesses.  It is not necessary to present evidence that Plaintiff lost money or sought medical

19

treatment in order to receive compensatory damages for emotional distress.  Nor must the

Plaintiff present medical evidence of mental or physical symptoms.

Authority: *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993).  *Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir. 1991); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 552-53 (9th Cir. 1980); *Seaton v. Sky Realty Co., Inc.*, 491 F.2d 634, 636-38 (7th Cir. 1974); *Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell*, 908 F.2d 864, 872-73 (11th Cir. 1990); *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983); *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977); *Bradley v. John M. Brabham Agency, Inc*., 463 F. Supp. 27, 32 (D.S.C. 1978); *Harris v. Itzaki*, 183 F.3d 1043, 1053 n.4 (9th Cir. 1999).

**Plaintiffs' Proposed Jury Instruction No. 16**

<u>Compensatory Damages – Long Island Housing Services, Inc.</u>

If you find in favor of Long Island Housing Services, Inc., then you may award Long Island Housing Services, Inc., such actual or compensatory damages as you find from a preponderance of the evidence were proximately caused by the acts of the Defendants. In determining such damages, you shall consider that Long Island Housing Services, Inc.,  is entitled to be compensated for:

(1) the effect of diverting its resources away from its other programs and activities in order to investigate the Defendants' unlawful conduct; and

(2) the damage to its mission and purpose.

In determining the amount to award Long Island Housing Services, Inc., you may consider the amount necessary to counteract the Defendants' wrongdoing.

Authority: Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions* § 105.03; *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993); *E. Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203, 212 (E.D.N.Y. 2001); *Saunders v. General Services Corp.*, 659 F. Supp. 1042, 1060-61 (E.D. Va. 1987); *Davis v. Mansards*, 597 F. Supp. 334, 348 (N.D. Ind. 1984).

**Plaintiffs' Proposed Jury Instruction No. 17**

<u>Punitive Damages</u>

If you find for the Plaintiffs, you may, but are not required to, award punitive damages. The purposes of punitive damages are not to compensate a plaintiff, but to punish a defendant and to deter a defendant and others from committing similar acts in the future.

The Plaintiffs have the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. You may award punitive damages only if you find that the Defendant's conduct was malicious or in reckless disregard of the Plaintiffs' rights. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal or state law. If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering punitive damages, you may consider the degree of reprehensibility of the Defendant's conduct and the relationship of any award of punitive damages to any actual harm inflicted on the Plaintiff.

If you award punitive damages, these damages must be separately stated in your verdict.

Authority: 42 U.S.C. § 3613(c)(1); *Manual Model Civ. Jury Inst., 9th Cir.*, No. 5.5 (2007); *United States v. Space Hunters, Inc.*, 429 F.3d 416, 427 (2d Cir. 2005); *Preferred Properties v. Indian River Estates*, 276 F.3d 790, 800 (6th Cir. 2002); *Parris v. Pappas*, 844 F. Supp. 2d 271, 280-82 (D. Conn. 2012).

Respectfully submitted,


/s/ Stephen M. Dane
Stephen M. Dane (admitted *pro hac vice*)
Thomas J. Keary (admitted *pro hac vice*)
RELMAN, DANE & COLFAX PLLC
1225 19th Street NW, Suite 600
Washington, D.C. 20036-2456
Phone: (202) 728-1888
Email: sdane@relmanlaw.com
        tkeary@relmanlaw.com

*Counsel for Plaintiffs Barbara Olsen, Donald Olsen, Sr. and Donald Olsen, Jr.*


/s/ Erik Heins
Erik Heins
LONG ISLAND HOUSING SERVICES, INC.
640 Johnson Avenue, Suite 8
Bohemia, N.Y. 11716-2624
Phone: (631) 567-5111
Email: erik@lifairhousing.org

*Counsel for Plaintiff Long Island Housing Services, Inc.*


Dated: November 26, 2012

# CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2012, the foregoing Plaintiffs' Proposed Jury Instructions was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

> John L. Ciarelli
> Ciarelli & Dempsey
> 737 Roanoke Avenue
> Riverhead, N.Y. 11901
> (631) 369-5100
>
> *Counsel for Defendants*

> /s/ Stephen M. Dane
> Stephen M. Dane (admitted *pro hac vice*)
> Thomas J. Keary (admitted *pro hac vice*)
> RELMAN, DANE & COLFAX PLLC
> 1225 19th Street NW, Suite 600
> Washington, D.C. 20036-2456
> Phone: (202) 728-1888
> Email: sdane@relmanlaw.com
>           tkeary@relmanlaw.com
>
> *Counsel for Plaintiffs Barbara Olsen, Donald Olsen, Sr. and Donald Olsen, Jr.*